UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:25-cv-09198-AB-SK | Date: | June 9, 2026 |
|---|---|---|---|

| Title: | *Arthuer L. Simms v. Imperial Woodpecker, LLC et al.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**     **[In Chambers] ORDER <u>DENYING</u> MOTION FOR REMAND [Dkt. No. 19]**

Before the Court is Plaintiff Arthur[1] Simms's Motion for Remand ("Motion," Dkt. No. 19). Defendants Imperial Woodpecker, LLC ("Imperial") and Shelly Dowdy Walter (together, "Defendants") filed an opposition and Plaintiff filed a reply. The Court granted Plaintiff's request for jurisdictional discovery. *See* Order (Dkt. No. 28). Thereafter the parties filed a Joint Supplemental Brief (Dkt. No. 32). Plaintiff's Motion for Remand is **<u>DENIED</u>**.

## I.     BACKGROUND

This is a putative wage and hour class action. Plaintiff's First Amended Complaint ("FAC," Dkt. No. 17) alleges seven claims for violation of the Cal.

---

[1] Defendants' Notice of Removal has an apparent typo in its title, showing Plaintiff's first name as "Arthuer" when the Complaint names him "Arthur." Because this typo was in the case-initiating pleading, it is reflected in the case title on the CM/ECF system.

Labor Code arising primarily out of meal and rest break violations, one claim under Cal. Bus. & Profs. Code § 17200, and a claim for breach of the implied employment contract. Defendants removed based on diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332, 1453.

The FAC defines the class as:

"Excluding full-time Staff Employees, all persons paid wages with checks describing 'IMPERIAL WOODPECKER, LLC' as the 'Controlling Employer' with respect to services provided in California during the period beginning no earlier than four years prior to the filing hereof to the date of a decision on a Motion for Class Certification (such persons are referred to as 'Class Members,' and such period is referred to hereafter as the 'Class Period.')"

FAC ¶ 49.

Plaintiff moves for remand on the ground that the Defendants did not establish that the amount in controversy exceeds $5,000,000 as required by CAFA. Plaintiff also argues that the case triggers CAFA's local controversy exception, § 1332(d)(4)(A), which requires the court to decline to exercise jurisdiction when certain criteria are met.

The Court ordered jurisdictional discovery directed to whether CAFA's local controversy exception applies, specifically, discovery regarding (1) the citizenship of defendant Shelly Dowdy Walter, and (2) the citizenship of the alleged class members.

## II.  LEGAL STANDARD

Under the Class Action Fairness Act, the court has original jurisdiction over a class action lawsuit in which: (1) the proposed class has at least 100 members; (2) any class member is a citizen of a state different from any defendant; and (3) the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2).

"[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). A "'defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193,

1197 (9th Cir. 2015) (quoting *Dart Cherokee*, 574 U.S. at 89). Where the plaintiff challenges the amount, then "[e]vidence establishing the amount is required." *Dart Cherokee*, 574 U.S. at 89. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.

A defendant may rely on "reasonable assumptions" to demonstrate that the amount-in-controversy requirement is satisfied. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Ibarra*, 775 F.3d at 1197-99). A defendant may rely on "'a chain of reasoning that includes assumptions.'" *Id.* at 925 (quoting *Ibarra*, 775 F.3d at 1199). These "assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* (quoting *Ibarra*, 775 F.3d at 1198-99). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.*

## III.   DISCUSSION

### A. The Amount in Controversy is Satisfied

Defendants have met their burden to establish that the amount in controversy exceeds \$5,000,000. Defendants' Notice of Removal estimates an amount in controversy of \$14,967,000.[2] Waiting time penalties account for the lion's share of that amount: \$12,000,000.

First, Plaintiff incorrectly argues that the Ninth Circuit requires a notice of removal to include admissible evidence of the amount in controversy. A notice of removal need only include plausible allegations of the amount in controversy, and need not include evidence. *See Dart Cherokee*, 574 U.S. at 84. Yet even though Defendants did not have to file evidence with their Notice of Removal, they did: the Declaration of Doug Halbert. In their Motion for Remand, Plaintiff faults the declaration for lacking foundation and personal knowledge, but the declaration states that it is based on Mr. Halbert's personal review of payroll records. Plaintiff otherwise argues that Defendants had to determine and consider certain specific data that would lower the amount in controversy. For example, Plaintiff states that

---

[2] The opposition presents an incomplete table that shows a higher amount in controversy of \$15,465,625 that appears to reflect a miscalculation of attorneys' fees. *See* Opp'n p. 16. However, both the Notice of Removal and the opposition attribute \$12,000,000 to the claim for waiting time penalties, which is the only claim the Court will address specifically.

the Labor Code's meal break requirement does not apply to union members, who Defendants state typically comprise more than half of production crew members, so Defendant should have excluded union members from meal break claims and the waiting time claims derivative of them. But even if union members were not entitled to meal breaks, it appears that union members were still entitled to rest breaks, and therefore they could assert rest break violations and derivative waiting time claims. Furthermore, Plaintiff's class definition does not exclude union members, so it is not clear why Defendant must do so given that they have at least rest break claims and claims derivative of them. Defendants need only present an amount put in controversy by Plaintiff's FAC and need not fully search its records to explore all of the variables that could result in a lower amount. The Halbert Declaration presents sufficient information to reasonably estimate the amount put in controversy by Plaintiff's claims.

Second, Plaintiff's challenges to Defendants' assumptions fail. Plaintiff's primary objection is that Defendants rely on a 100% violation rate to arrive at a "conservative" amount in controversy of $14,967,000. *See* NOR ¶ 25. But Defendant's 100% violation rate is based on the allegations of Plaintiff's FAC. For example, regarding the claim for waiting time penalties, valued at $12,000,000 (the highest-value claim by far), the FAC alleges that class members were contractually obligated to be on duty during all meal and rest breaks (FAC ¶ 33), none could leave during shift (*id.* ¶ 74), all worked more than 6 hour shifts of at least 8 hours per shift (*id.* ¶¶ 29, 64, 65), and all are entitled to waiting time penalties (*id.* ¶ 14, 64, 65). Based on these allegations, it was reasonable for Defendants to use a 100% violation rate for the derivative waiting time penalty claim. Similar allegations attach to the other claims, making a 100% violation rate reasonable. Applying a low-end hourly rate of $20 to all of the claims, plus an attorneys' fee of 20%, yields an amount in controversy of about $15 milllion. None of Plaintiff's arguments refute or overcome this, and Plaintiff has not presented substantial contrary evidence. Defendants have established that the amount in controversy exceeds $5 million.

### B. Plaintiff Has Not Established the Local Controversy Exception

Under CAFA's local controversy exception, the court must decline jurisdiction where: (1) more than 2/3 of the putative class members are citizens of the forum state; (2) at least one of the defendants from whom "significant relief is sought" and whose conduct formed a "significant basis" of the asserted claims is a citizen of the forum state; (3) the principal injuries claimed in the action must have occurred in the forum state; and (4) within the three years preceding the filing of an

action, no class action was filed against any defendant, in any forum, asserting the same or similar claims. 28 U.S.C. § 1332(d)(4)(A).

"The burden of establishing that a CAFA exception applies is on . . . the party seeking to remand." *King v. Great Am. Chicken Corp, Inc.*, 903 F.3d 875, 878 (9th Cir. 2018). The questions going to a party's citizenship are "essentially factual." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). The moving party must establish the facts by a preponderance of the evidence. *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 884 (9th Cir. 2013).

Here, the only disputed elements of the local controversy exception are whether more than 2/3 of the putative class are citizens of the forum state, and whether defendant Shelly Dowdy Walter is a citizen of the forum state.[3]

In their Joint Supplemental Brief, the parties agree that the evidence produced in jurisdictional discovery established that Ms. Walter is a citizen of California. This element of the local controversy exception is satisfied.

The parties also agree that the evidence produced in jurisdictional discovery yielded the following facts going to the citizenship of putative class members:

- 2,839 of 2,947 workers (96.34%) list California as the state of their address
- 2,558 of 2,947 workers (86.80%) reflect California as a state of tax withholding
- 2,488 of 2,947 workers (84.42%) reflect both California residence and California tax withholding.
- 1,661 of 2,947 workers (56.35%) have not worked for Imperial since December 31, 2023.

---

[3] In its opposition to the Motion for Remand, Defendants focused only on Ms. Walter's citizenship and did not dispute that significant relief is sought from Ms. Walter or that her conduct formed a significant basis of the claims. In the Joint Supplemental Brief, Defendants do challenge these two elements, arguing that Ms. Walter is fraudulently joined. This argument is not timely because Defendants did not raise it in the initial briefing, and the Court ordered supplemental briefing only to present the parties' positions following jurisdictional discovery on Ms. Walter's and the class members' citizenship. The Court therefore disregards Defendants' untimely fraudulent joinder arguments. In their section of the Joint Supplemental Brief, Defendants also repeatedly (38 times) refer to their adversary as "Yearwood." The Court infers that this is typo.

*See* Joint Suppl. Br. p. 2. Plaintiff argues that the data showing California as the state of address and state of tax withholding for 96.34% and 86.80% of class members, respectively, establishes that more than 2/3 of the class members are California citizens.

But looking at the facts all together, they don't establish by a preponderance of the evidence that more than 2/3 of the class members are California citizens. First, contrary to Plaintiff's characterization, the Ninth Circuit in *Mondragon* did not "expressly hold that residence constitutes prima facie evidence of domicile…" *See* Joint Br. 5:4-6 (citing *Mondragon*). In fact, in *Mondragon*, the Circuit observed that it has not yet adopted that presumption and declined to reach that issue; instead, residence is among the facts in the entire record that the court must review to determine citizenship. *Mondragon*, 736 F.3d at 885-86. Second, the data points above do not meet Plaintiff's burden to show that "greater than two-thirds of the putative class members were California citizens at the time the case was removed to federal court," *King*, 903 F.3d at 876, or when Plaintiff filed his now-operative FAC.[4]  This case was removed to federal court on September 25, 2025, and the FAC was filed on November 10, 2025. The last data point cited above

---

[4]  The Court observes that the Ninth Circuit, applying *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), now holds that diversity jurisdiction under CAFA is *not* determined *solely* at the time of removal. *See Faulk v. JELD-WEN, Inc.*, 159 F.4th 618 (9th Cir. 2025). Instead, "*Royal Canin* and [*Walker v. State*, 158 F.4th 971 (9th Cir. 2025)] instruct us to look to the operative complaint, including any post-removal amendments, when determining jurisdiction. And if the federal jurisdictional hook is excised from the complaint by post-removal amendment, subject matter jurisdiction is lacking, and the case should be remanded." *Faulk*, 159 F.4th at 623. Here, the key allegation going to the local controversy exception is the class definition insofar as it encompasses non-California citizens. But the class definition is the same in both the original Complaint (Compl. ¶ 51) and in the FAC (FAC ¶ 49): it encompasses "all persons" and is not limited to California residents. Had Plaintiff amended his class definition to limit it to California citizens, or should he yet do so, that could trigger the local controversy exception. *See Faulk*, 159 F.4th at 624 ("a plaintiff may extinguish jurisdiction through post-removal amendments") (citing *Royal Canin*).

reflects that 56% of the class members have not worked for Imperial since December 31, 2023, about 21 months before the case was removed and 22.5 months before the FAC was filed. Therefore, the address data for more than half of the putative class is stale by at least 21 months. So even were the Court to consider the state of residence as evidence tending to show the state of citizenship, the address data here is too old for too many members (56%) for the Court to conclude that it reflects the address, and, inferentially, the citizenship. of more than 2/3 of the class members. The tax withholding data for that 56% is also stale. Furthermore, tax withholding data is of low probative value anyway because California requires non-residents to pay income tax on California income and requires employers to withhold taxes from the wages of non-residents who work in California. *See* Cal. Rev. & Tax. Code § 17951, Cal. Unemp. Ins. Code § 13020. For these reasons, the facts yielded by the jurisdictional discovery do not establish that more than 2/3 of the class members are California citizens.

Defendants also point to significant dislocation in Los Angeles's commercial production industry as impacting the class members' citizenship: over the last 5-6 years, Los Angeles has suffered a substantial decline in commercial production, ranging from a decrease of 48% or 35%, depending the exact time frame. Class members worked on such productions. Based on this data, Defendants infer substantial dislocation among the class members, concluding that many likely moved out of state. The Court is not persuaded that Defendants' premise leads to its conclusion: even if the Los Angeles area experienced disruption in this industry, whether class members moved en masse, and moved out of the state en masse, is pure speculation. Nevertheless, even disregarding this argument, the Court finds that the address and tax withholding data points referenced above, especially given the staleness of 56% of the data, do not establish by a preponderance that at least 2/3 of the class members are citizens of California. Therefore, Plaintiff has not met his burden to establish that the local controversy exception applies.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Remand (Dkt. No. 17).

**IT IS SO ORDERED**.